UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~
In Re                             :           Chapter 7
DEN-L TRANS, INC.                             Case No. 09-41613
        Debtor       :
~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM OF DECISION ON MOTION BY BROKER RICHARD A. SEDER TO ALLOW BUSINESS BROKER FEE

This matter came before the Court for a non-evidentiary hearing on the Motion by Broker Richard A. Seder to Allow Business Broker Fee [# 90] (the "Fee Application"), the objections by Imperial Capital Bank[1] [# 94], and the Chapter 7 Trustee [# 97]. Seder filed a reply [# 98] to which his affidavit ("Seder Affidavit II") was appended; at the hearing the Chapter 7 Trustee filed copies of various emails [# 101]. At the hearing the Court asked each party whether an evidentiary hearing was needed or requested; each declined the invitation and represented that the facts were not in dispute. The Court understands that to mean that, although the averments in the various pleadings except the Seder Affidavit are not evidence, the parties did not generally dispute their accuracy. Thus the facts are drawn from the pleadings and representations of counsel made at oral argument with some inconsistencies noted as appropriate.

**FACTS**

On July 20, 2009, approximately three months after the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, the Court directed the appointment of a Chapter 11 trustee. David Nickless was appointed and approximately one month later sought the appointment of Richard A. Seder as a "business broker." The Motion for Authority to Employ

---

[1] Imperial is now known as City National Bank but the Court will continue to refer to it as "Imperial" in this decision.

Business Broker [# 49] (the "Motion to Employ") is rather sparse in its description of the services to be rendered by Seder and states in relevant part:

> 3. The Debtor is engaged in the business of "trans-shipping" plastic powder and pellets and is the owner of real estate located at 41 Main Street, Oxford, MA comprised of approximately 8.12 acres and improved with a pre-fabricated steel frame building (hereinafter the Real Estate).
>
> 4. Your Trustee wishes to employ Richard A. Seder and Seder Advisory Services, 57 Oak Hill Road, Worcester, MA 01609 to sell the company assets.
>
> ***
>
> 6. Compensation for said Business Broker will be 6% but only if successful in selling the company assets.

Seder's affidavit in support of his employment ("Seder Affidavit I") states he had no connections with the debtor, creditors, or other parties in interest. The Motion to Employ was allowed without objection on September 8, 2009. On September 28, 2009 the Trustee filed an Expedited Motion to Employ Francis J. Trapasso as Auctioneer [# 56] (the "Auctioneer Motion"). In the Auctioneer Motion the Trustee represented that:

> 5. The Trustee has been negotiating with a trucking company for the sale of some of the assets of the Debtor and the lease or purchase of the real estate owned by the Debtor. As of this writing, the negotiations have not resulted in any definitive agreement.
>
> 6. Your trustee wishes to employ Francis J. Trapasso of Francis J. Trapasso & Associates to auction some or all of the assets of the Debtor. Sale of the real estate would be subject to a reserve set by mutual agreement between the Trustee and Imperial.
>
> ***
>
> 7. Expedited determination is requested as the Trustee has committed to conduct an auction by the end of October and the auctioneer has indicated that October 29, 2009 is an available date.

The certificate of service does not indicate the Auctioneer Motion was served on either Seder or

2

Dana Transport, Inc. ("Dana Transport"), the trucking company referred to in the Auctioneer Motion.

The following day the Trustee filed a motion to sell the Debtor's assets at a public auction [# 58] (the "Sale Motion"). In the Sale Motion the Trustee stated:

> 3. The Debtor's assets include, but are not limited to, over eight acres with hundreds of feet of frontage on a railroad siding and improved with a steel frame building located at 41 Main Street, Oxford, MA (hereinafter the Real Estate), a number of tractors and bulk delivery trailers, and various other pieces of fixtures, furnishings, and equipment.
>
> 4. In August 2009 the Trustee engaged Richard Seder to sell the Debtor's assets as a going concern. Although there has been some interest in the acquisition of some or all of the assets of the Debtor and conducting an operation in place, no acceptable offer has been received at this time.....
>
> ***
>
> 8. Due to the current depressed state of the real estate market the Trustee and Imperial have agreed that a reserve price will be set for the sale of the Real Estate. All other assets will be sold at absolute auction....

Imperial, which held a security interest in the Debtor's real estate,[2] filed a limited objection to clarify, among other things, that only the auctioneer's compensation and the Trustee's fees and expenses were to charged against the sale proceeds. The limited objection was not served on Seder or Dana Transport.

According to the Seder Affidavit II, Seder did not receive service of either the Sale Motion or the proposed order of the sale. He also testified in the Seder Affidavit II that "I was unaware of any terms in either pleading that would limit or eliminate my fee as the Debtor's

---

[2]Imperial also holds a security interest in real estate of Riverside Real Estate, LLC, an entity affiliated with the Debtor. Riverside is also a debtor in Chapter 11 proceedings before this Court, Chapter 11 Case No. 09-41610. The Trustee also serves as the Chapter 11 trustee in the Riverside case.

3

business broker. I did, however, receive notice of sale with respect to the Auction." Moreover, in the same affidavit, Seder stated that he informed an employee of Dana Transport about the auction and urged that a representative of Dana Transport attend the auction. Specifically the Seder Affidavit II states:

> 8. On October 26 or October 27, 2009, I called Poselli [the transport manager of Dana Transport] to inquire whether Dana intended to bid at the Auction, and to advise Dana of the date of the Auction. Poselli told me that neither he nor anyone else at Dana had received notice of the Auction; I then recommended that he and/or Mr. Dana attend the Auction, and advised Poselli regarding the bidding terms of the Auction, including the requirement that Dana provide an acceptable bank check in order to participate in the Auction.

At the hearing the Trustee produced copies of emails which he says indicate that Seder and Dana Transport were served with the "sale documents." The attachment line of the email indicates that "59 Sale Ntc.pdf" and "58 Sale-Mtn.pdf" were attached to the October 1, 2009 email sent to Ron Dana, with copies to Michael Poselli and Seder, although the email produced to the Court were produced without the actual attachments. At the hearing, Seder represented that he had no recollection of the emails but, as he stated in his affidavit, was aware of the auction.

According to Seder, at his urging Dana Transport attended the auction and was the successful bidder, bidding $1 Million for the Debtor's real estate and for certain personal property. The sale was consummated by an affiliate or designee of Dana Transport. At or around the time of the sale, the Court granted the Trustee's motion to covert the case to one under chapter 7. The Chapter 11 Trustee was appointed as the Chapter 7 Trustee.

Seder now seeks a $60,000 commission based on 6% of the $1 Million sale price. Both the Trustee and Imperial Bank object to the payment of any money to Seder.

**POSITION OF THE PARTIES**

In support of his application for compensation, Seder states that his engagement as a business broker to sell the Debtor's assets covered the sale of both the real estate and personal property.  Although recognizing that the engagement also required that he be successful in selling the assets, Seder argues that his activities were "instrumental" in causing the sale of the Debtor's real estate.  The Court notes that Seder did not proffer any evidence as to whether he is licensed as a real estate broker by the Commonwealth.

Imperial opposes paying any amount to Seder because it argues he was not engaged to sell the real estate and cites *In re Pollack*, 22 B.R. 673, 676 (Bankr. D. Mass. 1982), for the proposition that a bankruptcy trustee cannot "seek to retain a broker to sell real estate that is subject to the secured claim and lien without being specific as to the disposition or potential disposition of such real estate asset."  At oral argument Imperial's counsel stated that "the Trustee confirmed with me that the motion to employ the broker was only with respect to the debtor's business–the business assets."  At oral argument Imperial's counsel argued that the broker was actually working for Dana Transport and it was Dana Transport which benefitted from Seder's services.  Additionally Imperial argues Seder was not successful in bringing the sale to fruition and that payment of a commission to him would violate the terms of the sale order which provided only for deductions for the fees and expenses of the auctioneer and the Trustee and for unpaid real estate taxes.  Imperial argues that Seder fares no better under Massachusetts law because his services were not the "efficient or effective means of bringing about the sale" and in light of the engagement's requirement that he be "successful in selling the company's assets" Massachusetts law cannot supplant the terms of an express agreement as this Court noted in its decision in *In re Weston Nurseries*, 2008 WL 1733362 (Bankr. D. Mass. April 14, 2008).

The Trustee responded to Seder's fee request by noting that when he first communicated with Seder, shortly after the Trustee's appointment, the Trustee informed Seder "what Seder would be required to do if he were to be employed as a business broker." The Trustee's response, however, does not provide any further specifics of what the Trustee told Seder his role would be. At the hearing the Trustee reiterated that pursuant to the Motion to Employ Seder, Seder was employed as a "business broker, not a real estate broker, and not an asset broker...." Although not denying, and in fact confirming that Seder expended considerable energy in attempting to put a deal together, the Trustee denies that Seder was successful in obtaining an offer for the sale of the business. Moreover, at the hearing the Trustee noted that there was no equity in the real estate and that Imperial was still had a claim of approximately $1.2 Million to $1.3 Million.

**DISCUSSION**

Unlike *Weston Nurseries*, where the Court had a copy of the contract, namely the Exclusive Sales Agency Contract which governed the conditions under which the broker would receive a sales commission, the Court has not been provided with any document or documents that describe the terms of the broker's engagement beyond the bare bones recitations in the Motion to Employ. Thus the first issue is what are the "company assets" which, according to the Motion to Employ, Seder was engaged to sell. The answer seems to be that any asset owned by the company, whether real or personal, is included. Although Imperial and the Trustee may have had a discussion that only non-real-estate assets were to be covered by the broker's engagement, there is nothing before the Court to indicate such a limitation was intended. Nor is there anything in the Motion to Employ to indicate that the company had to be sold as a going concern in order for Seder to receive a commission for selling the assets.

The Motion to Employ, however, requires that Seder be "successful" in selling the company's assets. Again there is no further guidance as to what constitutes success in this context. Giving the word "successful" its usual meaning, namely that of "accomplishing an aim or purpose," Oxford Dictionary On-Line 2009 Edition, the Court finds that Seder was not successful. He did not succeed in accomplishing the sale; the auctioneer did. Consequently, although apparently there was no broker contract signed by the Trustee and Seder, the terms of the engagement, albeit sparse, are set forth in the Motion to Employ and the Court will not look to Massachusetts law to supplement what the parties agreed would control the engagement.

Finally, it is not unjust to leave Seder without a commission from the sale. As noted by Imperial but not disclosed by Seder until the Seder Affidavit II,[3] Seder had been employed by Dana Transport to assist it is setting up a rail transfer operation in Upton, Massachusetts. The Court is not aware of the terms of that employment nor is it within this Court's jurisdiction to determine whether he is entitled to any compensation from Dana Transport as a result of having brought it to the sale.

**CONCLUSION**

---

[3] In the Seder Affidavit II, Seder stated that prior to August 2009, Dana Transport employed him as an advisor to assist it in setting up a rail transfer operation in Upton, Massachusetts. It was as a result of that employment that Seder arranged the initial meeting with the Trustee. Seder Affidavit II at ¶¶ 2 and 3.

For the foregoing reasons, the Motion by Broker Richard A. Seder to Allow Business Broker Fee [# 90] is DENIED.

A separate order shall issue.

Dated: January 11, 2010

_____
Joel B. Rosenthal
United States Bankruptcy Judge